```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------- ----X

KHABIB NURMAGOMEDOV,

                        Plaintiff,                 MEMORANDUM AND ORDER
            - against -
                                                    23 Civ. 6683 (NRB)
LEGIONFARM, INC.,
                        Defendant.

---------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Khabib Nurmagomedov ("Nurmagomedov" or "plaintiff"), a mixed martial arts athlete in the Ultimate Fighting Championship ("UFC"), brought an action against Legionfarm INC. ("Legionfarm" or "defendant"), a videogame service business, alleging that defendant failed to pay plaintiff pursuant to a promotional contract. ECF No. 1 ("Compl."). The instant motion, filed by defendant on September 20, 2024 under Rule 37(e) of the Federal Rules of Civil Procedure, is predicated on plaintiff's and his manager's alleged violation of a duty to preserve evidence, causing prejudice and meriting spoliation sanctions. See ECF No. 35 ("Mot."). Plaintiff opposes the motion and argues, among other things, that defendant has failed to establish a duty to preserve or demonstrate prejudice. See ECF No. 40 ("Opp.").[1] For the following reasons, the motion is granted in part and denied in part.

---

[1] Plaintiff filed its opposition on October 11, 2024, ECF No. 40, and defendant replied on October 21, 2024, ECF No. 43 ("Reply").

1

**BACKGROUND**

In December of 2021, the parties entered an agreement in which Nurmagomedov authorized Legionfarm to mint and sell digital non-fungible tokens ("NFTs") in his name for payments of at least $3,000,000 (the "Agreement").  Compl. ¶ 2.  For his part, Nurmagomedov promised to perform certain promotional services for Legionfarm, including attending video game tournaments and posting content on his well-followed social media pages.  Id.  Plaintiff's long-time manager, Yarmet Yarmetov ("Yarmetov"), originally sourced the Legionfarm deal and served as the primary liaison between the parties.  See Reply at 4.  The parties initially performed under the Agreement before it ultimately unraveled.  Mot. at 3–6.

Based on asserted breaches by both sides, the parties exchanged demand letters in April and June of 2022.  Compl. ¶ 3.  Plaintiff's counsel, the same attorney opposing the instant motion, sent the first demand letter on April 11, 2022.  ECF No. 36, Ex. K, Plaintiff's April 2022 Demand Letter ("Pl. Demand Letter").  The letter expressly put the parties "on notice of potential litigation" and made clear that relevant custodians were required to "take all necessary steps to preserve . . . communications, documents and electronically stored information ("ESI") relevant to the Agreement."  Id.  Litigation indeed ensued, with plaintiff filing a complaint on July 31, 2023 alleging breach of contract and seeking $1,811,000 in damages.  See Mot. at 3.  On September 11, 2023,

2

defendant answered and asserted a breach of contract counterclaim. See ECF No. 7. The parties then embarked on discovery.

On July 9, 2024, defendant notified the Court that plaintiff and his manager "testified at their depositions that they deleted all internal WhatsApp communications pertaining to LegionFarm's and Plaintiff's business relationship." See ECF No. 22 at 1. Plaintiff's response on July 12, 2024 did not dispute that numerous WhatsApp messages had indeed been deleted. ECF No. 24. The Court held a conference on July 31, 2024 and asked the parties to report whether the deleted communications could be retrieved. After investigating the matter, plaintiff notified the Court on August 30, 2024 that the messages could not be recovered. See ECF No. 30. On September 11, 2024, this Court granted defendant leave to move for spoliation sanctions. See ECF No. 33.

**UNDISPUTED FACTS**

Based on the record before the Court, two facts are undisputed: (1) WhatsApp was a frequently used platform and key repository of information about the Agreement; and (2) plaintiff and his manager failed –- despite a plain litigation hold -- to take reasonable actions to preserve their WhatsApp communications.

First, existing evidence demonstrates that WhatsApp was a main channel for plaintiff, his manager, and Legionfarm executives to discuss matters relevant to the Agreement. For example, Yarmetov testified that he regularly communicated with Legionfarm's CEO

3

Alexey Belyankin ("Belyankin") "via WhatsApp" and used the platform to "discuss[] the terms and conditions" of "the contract." See ECF No. 36, Ex. N, Deposition of Yarmet Yarmetov on March 7, 2024 ("Yarmetov Depo.") at 21:15—18, 22:22-25. Additionally, existing WhatsApp messages discuss issues concerning payment, conduct, and performance under the Agreement -- all of which are chiefly relevant to the parties' breach of contract claims and counterclaims. For example, chats indicate that plaintiff and Belyankin got into a disagreement that ended with plaintiff announcing that "he had no intention of appearing in person at another tournament." Mot. at 4; see also ECF No. 36, Ex. A, Belyankin Deposition on March 19, 2024 ("Belyankin Depo."). Other threads describe plaintiff's conduct at various promotional events. Id. Belyankin testified that he was "constantly saying . . . to Yarmet" over WhatsApp "that Khabib was acting really bad, that something must be changed," and Yarmetov replied that he would "talk to [Khabib] for him to be more loyal." Belyankin Depo. at 81:25-82:7. These examples are only a sampling of the available WhatsApp messages, and they strongly bolster the inference that the deleted messages would be meaningfully relevant to the substantive issues in this case.

The second undisputed fact is that plaintiff and his manager (i) were on notice of potential litigation concerning the Agreement; (ii) were notified that they needed to preserve evidence related

4

thereto; and (iii) ultimately failed to take reasonable steps to do so.  See Mot. at 11–13; see also Pl. Demand Letter.

Rather than "preserve . . . WhatsApp" messages as the April 2022 demand letter explicitly directed, id., plaintiff -- who was CC'ed on the letter -- instead changed numbers and/or devices about "twice a year" thereafter without ever bothering to "check the WhatsApp website to see how [he] could save [his] texts and threads."  ECF No. 36, Ex. I, Plaintiff's Deposition on June 21, 2024 ("Pl's Depo.") at 23:14-17, 25:9-15.  At his deposition, plaintiff even stated: "I delete everything and then I change my number. . . .  So I start the new number from scratch."  Id. at 24:2-16.

Yarmetov, also under a preservation duty, similarly did not attempt to check whether or how to preserve ESI across the "five or six" devices he switched-out for plaintiff since 2022.  Yarmetov Depo. at 31:21-24.  Yarmetov even admits that he did not retain "any conversations on WhatsApp with Khabib concerning Legionfarm."  Id. at 34:2-6.

Together, these two undisputed facts provide the foundation of the Court's analysis on spoliation sanctions.

## LEGAL STANDARD

Rule 37(e) of the Federal Rules of Civil Procedure permits a court to sanction a party if "electronically stored information that should have been preserved in the anticipation or conduct of

5

litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery."[2]  Fed. R. Civ. P. 37(e).  For a movant to succeed in securing spoliation sanctions, it must first show "prejudice . . . from loss of the information."  Id. at (e)(1).  If that threshold is met, a court "may order measures no greater than necessary to cure the prejudice."  Id.  But, if a court finds "that the party acted with the intent to deprive another party of the information's use in the litigation," harsher sanctions may be imposed, such as an adverse inference or even dismissal.  Id. at (e)(2).

## DISCUSSION

I. Analysis Under FRCP 37(e)(1)

    A. **Plaintiff and His Manager Had a Duty to Preserve Relevant Evidence and Failed to do so.**

The threshold consideration in the spoliation analysis is whether "'the spoliating party had an obligation to preserve the evidence at the time it was destroyed.'"  Karsch v. Blink Health Ltd., No. 17 CV 3880 (VM) (BCM), 2019 WL 2708125, at *18 (S.D.N.Y. June 20, 2019) (quoting Leidig v. Buzzfeed, Inc., 16 Civ. 542 (VM) (GWG), 2017 WL 6512353, at *8 (S.D.N.Y. Dec. 19, 2017)).  This obligation "'arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the

---

[2] Rule 37(e) was adopted in 2006 and modified in 2015 to address various features of modern electronic discovery.  See 2015 Committee Notes on Rule 37(e).

6

evidence may be relevant to future litigation.'" Id. at *48 (quoting Fujitsu Ltd. v. Fed. Exp. Corp., 247 F.3d 423, 436 (2d Cir. 2001)).

The record before the Court is unequivocal: a duty to preserve arose at least as early as April 11, 2022. On that date, plaintiff's counsel sent defendant a textbook demand letter[3] containing four critical features:

First, the letter clearly previewed litigation, stating:

> "Should Legionfarm fail to remit all sums due to Mr. Nurmagomedov by that date, Mr. Nurmagomedov will take appropriate action to enforce the Agreement and compel Legionfarm to comply with its obligations. Legionfarm is now on notice of potential litigation."

See Pl. Demand Letter at 1–2 (emphasis added).

Second, the letter expressly directed the parties and relevant non-parties to preserve evidence, stating:

> "Please forward a copy of this letter to all who may have relevant documents and ESI in their possession [and] all persons and entities with custodial responsibility . . . as well as to any of your representatives. . . . [All such individuals] are required to take all necessary steps to preserve, and not destroy, conceal, or alter, any and all communications, documents and electronically stored information ("ESI") relevant to the Agreement. . . ."

Id. at 2 (emphasis added).

---

[3] Aside from the terms of the instant demand letter, there is also clear precedent in this Circuit that sending a demand letter is sufficient to trigger a party's obligation to preserve. See Karsch, 2019 WL 2708125, at *18 (finding that plaintiff's duty to preserve arose on the date he sent a "demand letter . . . threatening legal action"); Ottoson v. SMBC Leasing & Fin., Inc., 268 F. Supp. 3d 570, 581 (S.D.N.Y. 2017) (finding plaintiff had "an obligation to preserve [evidence] from . . . the date that her counsel sent a demand letter to Defendants threatening litigation").

7

Third, plaintiff's counsel painted a clear picture as to what the duty to preserve entailed, stating:

> "Your obligation to preserve . . . ESI extends to . . . data generated by and/or stored on your computer systems and storage media. . . . This includes, but is not limited to, e-mail and other electronic communications; word processing documents; instant messages; text messages; Signal; WhatsApp (and any similar social media and/or electronic communication system, application, or method of communication). . . . [T]o the extent you have not done so . . . we urge you to ensure that you immediately take reasonable steps to preserve this information. . . . This includes, but is not limited to, an obligation to discontinue data destruction and backup tape recycling policies; preserve and not dispose of relevant hardware; preserve and not destroy passwords. . . and maintain all other pertinent information and tools needed to access, review and reconstruct all requested or potentially relevant electronic data. Your obligation also includes turning off any automatic delete functions on your smartphone, its applications and any other devices or programs you use to communicate or store information."

Id. (emphasis added).

Finally, plaintiff's counsel outlined the consequences of spoliation, stating:

> Courts . . . have imposed severe penalties on parties, and non-parties, that have failed to preserve paper files or ESI."

Id. (emphasis added).

In light of the above, we fail to understand how plaintiff can now try to claim that "[n]either [p]laintiff [n]or Yarmetov [h]ad

8

a [d]uty [t]o [p]reserve the WhatsApp [m]essages at the [t]ime [t]hey [w]ere [l]ost." Opp. at 19.

As a named party, Nurmagomedov's duty to preserve cannot be seriously disputed -- he was, as noted earlier, CC'ed on the April 2022 demand letter. See Pl. Demand Letter at 4. Moreover, Yarmetov's non-party status does not obviate his preservation obligations. Non-parties that "control" relevant evidence owe the same preservation duties as parties, and -- where the "concept of control [is] construed broadly," In re Flag Telecom Holdings, Ltd. Sec. Litig., 236 F.R.D. 177, 180 (S.D.N.Y. 2006) (internal marks omitted) -- owe the same preservation duties as parties. Here, Yarmetov was plaintiff's manager for over five years and entrusted with overseeing many aspects of plaintiff's daily life, ranging from monitoring his phone to supervising his commercial partnerships. See Yarmetov Depo. at 8:20-9:14, 10:19-10:25. Yarmetov therefore had inside access to plaintiff, and perhaps even more so in the context of plaintiff's Legionfarm dealings because it was Yarmetov who originated the commercial opportunity and served as the nexus between the parties on matters relating to the Agreement. Hence, it is beyond cavil that both plaintiff and his manager owed comparable preservation duties at the time of destruction.

Accordingly, both plaintiff and his manager were thus legally obligated to take "reasonable steps to preserve" relevant evidence.

See Karsch, 2019 WL 2708125, at *19. The most prudent approach would have been to avoid changing -- let alone repeatedly -- phone numbers and WhatsApp accounts while under a litigation hold. And if, as plaintiff and his manager argue, plaintiff's number and/or devices had to be changed because of his celebrity status, plaintiff and his manager were still obligated to affirmatively protect relevant communications. See Opp. at 7-8; see also Yarmetov Depo. at 30:17-19. Ultimately, if plaintiff or his manager were unsure as to what their preservation duties entailed, they could have consulted plaintiff's counsel or his April 2022 demand letter. However, plaintiff and his manager wholly failed to take even the most basic steps to comply with their preservation obligations.

This failure is even more troubling considering the de minimis effort that would have been required to preserve WhatsApp communications across plaintiff's numbers and/or devices: all plaintiff and his manager had to do was use WhatsApp's "built-in feature that allows users to change their phone numbers and still retain their chat histories." Mot. at 7, n.2; see also ECF No. 36, Ex. O, WhatsApp Help Center, About Changing Phone Numbers.

### B. Defendant's Prejudice From Plaintiff's Spoliation.

Having determined that plaintiff and his manager failed to preserve WhatsApp records as required, the next step in the Rule 37(e) analysis is to assess the prejudicial impact of spoliation, which requires "'an evaluation of the information's importance in

10

the litigation.'" Karsch, 2019 WL 2708125, at *20 (quoting Fed. R. Civ. P. 37(e)(1) Advisory Committee's Note to 2015 Amendments). Since it is difficult to discern prejudice from evidence that is no longer available, courts do not "'hold[] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence.'" Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 109 (2d Cir. 2002) (quoting Kronisch v. United States, 150 F.3d 112, 128 (2d Cir. 1998)).

Here, defendant easily demonstrates from available evidence that WhatsApp was a main channel for discussing matters directly relevant to the Agreement, see supra Undisputed Facts, and while the Court cannot be sure of the deleted messages' contents, there is no reason to doubt that they are similar in kind to the preserved messages and therefore impact the ability of the defendant to substantiate its counterclaim and defenses. Mot. at 4, 15.

Plaintiff's argument to the contrary is unavailing. Plaintiff states: "Legionfarm cannot show prejudice because the WhatsApp messages cannot save Legionfarm's counterclaim." Opp. at 10. At bottom, this argument assumes the ultimate result in this case, namely that defendant cannot be prejudiced if it was the breaching party. However, this is not the time to assume the outcome desired by plaintiff. Defendant's showing of prejudice is therefore sufficient at this stage regardless of the merits of its case.

11

### C. **Defendant is Entitled to Rule 37(e)(1) Sanctions.**

The next issue concerns the appropriate spoliation sanctions. Defendant seeks three sanctions under Rule 37(e)(1): (1) preclusion of any testimony by plaintiff about the deleted messages' contents; (2) permission to present evidence of plaintiff's spoliation; and (3) fees and costs associated with the spoliation motion. Mot. at 18-22.

In general, courts are afforded significant discretion in determining appropriate spoliation sanctions. Henry v. Morgan's Hotel Grp., Inc., No. 15 Civ. 1789 (ER), 2018 WL 502711, at *2 (S.D.N.Y. Jan. 22, 2018) ("The determination of an appropriate sanction for spoliation is confined to the sound discretion of the court.") (citation omitted). This discretion is not unbounded, however, for a court's sanction should be "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

Since defendant has sufficiently demonstrated duty, breach, and prejudice, the Court grants the first two requested sanctions as outlined above.

The Court will not, however, award attorneys' fees at this time for two reasons. First, Rule 37(e), unlike every other subsection in Rule 37, does not contain a clause that expressly permits the recuperation of attorney's fees and expenses. See e.g., Fed. R. Civ. P. 37(f) ("If a party or its attorney fails to participate in good faith in developing and submitting a proposed

12

discovery plan . . . the court may . . . require that party or attorney to pay to any other party the reasonable expenses, including attorney's fees, caused by the failure.").

Second, while it is true that courts have used their inherent authority to award fees and costs as a sanction for spoliation,[4] such a remedy is typically only appropriate, as defendant's brief acknowledges, see Mot. at 21, to rectify the "prejudice caused by the spoliation." CBF Industria de Gusa S/A v. AMCI Holdings, Inc., No. 13 Civ. 2581 (PKC) (JLC), 2021 WL 4190628, at *20 (S.D.N.Y. Aug. 18, 2021) (citing Lokai Holdings LLC v. Twin Tiger USA LLC, No. 15 Civ. 9363 (ALC) (DF), 2018 WL 1512055, at *9 (S.D.N.Y. Mar. 12, 2018)). Thus, an award of fees is largely intended to compensate the opposing party for "corrective discovery efforts" required to overcome the evidentiary destruction. Klipsch Grp., Inc. v. ePRO E-Com. Ltd., 880 F.3d 620, 631–35 (2d Cir. 2018) (upholding monetary sanctions calculated to make the movant whole for the extra cost and efforts it reasonably undertook in response to its adversary's spoliation); see also Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 78 (S.D.N.Y. 1991) (finding that "[c]ompensable costs" typically arise "from the discovery necessary to identify

---

[4] See e.g., Dorchester Fin. Holdings Corp. v. Banco BRJ S.A., 304 F.R.D. 178, 185 (S.D.N.Y. 2014) ("To fully correct the prejudice to BRJ from Dorchester's spoliation, the Court also orders Dorchester and Morrow to pay BRJ's reasonable attorney's fees and costs in connection with the spoliation dispute."); Taylor v. City of New York, 293 F.R.D. 601, 616 (S.D.N.Y.2013) ("The Court's imposition of spoliation sanctions warrants the award of reasonable attorney's fees.").

13

alternative sources of information, or from the investigation . . . of the document destruction itself").

Here, since defendant has not demonstrated that it undertook corrective discovery efforts beyond the making of this motion, the Court lacks an evidentiary basis to assess reasonable attorney's fees as a sanction at this time. See ELG Utica Alloys, Inc. v. Niagara Mohawk Power Corp., No. 16 Civ. 1523 (BKS) (ATB), 2023 WL 5806327, at *6 (N.D.N.Y. Sept. 7, 2023) ("Because Defendants have not submitted supporting billing records, however, the Court lacks an evidentiary basis to assess reasonable attorney's fees and cannot impose the sanction at this time.") (citation omitted).

## II.  Analysis and Remedies Under FRCP 37(e)(2)

Finally, we turn to whether additional, harsher sanctions should be awarded under Rule 37(e)(2). A spoliation sanction such as "an adverse inference instruction" is available if "the Court finds 'that the party acted with the intent to deprive another party of the information's use in the litigation.'" Best Payphones, Inc. v. City of New York, No. 01 Civ. 3924 (JG)(VMS), 2016 WL 792396, at *4 (E.D.N.Y. Feb. 26, 2016) (quoting Fed. R. Civ. P. 37(e)(2)). Courts have held that "the 'intent to deprive another party of the information's use in the litigation' is the equivalent of bad faith in other spoliation contexts." See Skanska USA Civ. Se. Inc. v. Bagelheads, Inc., 75 F.4th 1290, 1312 (11th Cir. 2023) (quoting Fed. R. Civ. P. 37(e)(2)).

14

Here, since the parties have opted to proceed with a non-jury trial, the Court's determinations as to plaintiff's intent and the propriety of an adverse inference will await an evaluation of the parties' testimony at trial.

## CONCLUSION

For the foregoing reasons, defendant's motion is granted in part and denied in part.  Specifically, defendant is granted the requested sanctions under Rule 37(e)(1) -- except for attorneys' fees -- but is denied Rule 37(e)(2) sanctions at this time.  The Clerk of Court is respectfully requested to terminate the pending motion and related letter motions at ECF Nos. 22, 25, and 34.

**SO ORDERED.**

Dated:    December 4, 2024
          New York, New York

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE